UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MICHAEL URBANO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:19-CV-67 RLM |
| | ) | |
| ANDREW SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Michael Urbano seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons stated in open court at the hearing on February 13 and summarized below, the court reverses the Commissioner's decision and remands for further proceedings.

Michael Urbano was insured through June 30, 2015, and had to show that he became disabled before that date to be eligible for benefits. In October 2014 (the alleged onset of disability, as amended) Mr. Urbano was 34 and had at least a high school education.[1] He applied for disability insurance benefits based on a variety of physical and mental impairments, including acute cervical dystonia,

---

[1] Mr. Urbano alleged disability as of January 31, 2012 in his applications, but amended it to October 15, 2014 at the administrative hearing. He was insured through June 30, 2015.

major depressive disorder, anxiety disorder, cannabis use disorder, HIV, and herpes. His applications were denied initially, upon reconsideration, and following an administrative hearing in December 2017.

After reviewing the medical evidence and hearing testimony from Mr. Urbano and a vocational expert, Thomas Gusloff, the ALJ concluded that Mr. Urbano retained the residual functional capacity to perform medium work with some limitations, that he couldn't perform his past relevant work as a sales representative and data entry clerk, but could perform other work that existed in significant numbers in the national economy, and that he wasn't disabled within the meaning of the Act from October 15, 2014 through February 22, 2018 (the date of her decision). More specifically, the ALJ found that:

- Mr. Urbano had severe physical and mental impairments (cervical dystonia, major depressive disorder, anxiety disorder, cannabis use disorder), and some non-severe physical impairments (HIV and herpes). [AR 13]

- His impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, specifically Listings 12.04 (depressive disorders) and 12.06 (anxiety disorders). [AR13-15]

- Mr. Urbano's statements concerning "the intensity, persistence and limiting effects of [his] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] opinion." [AR 16-17, 20-21].

- The statements made by Mr. Urbano's treating physicians, Dr. Leonard Verhagen and Dr. Krista Molina, were entitled to little or no weight because Dr. Verhagen's statements (Exhs. 8F and 10F) weren't supported by "specific and complete clinical findings or other objective medical evidence and were "inconsistent with the evidence

2

- considered as a whole", and Dr. Molina (Exh. 11F) didn't render a medical opinion. [AR 21-22]

- The opinions of the state agency medical consultants, Drs. J. Sands and Brill, and the psychological consultants, J. Grange, Ph.D., and Donna Unversaw, were entitled to "some weight", although she disagreed with the psychological consultants opinion regarding the severity of Mr. Urbano's mental impairments. [AR 21]

- "[Mr. Urbano's] statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record", and statements made by his mother, Renee Hineline (Exh. 8E) were entitled to "some weight" as to activities of daily living and level of functioning, but she wasn't competent to make a diagnosis or argue severity of symptoms in relation to ability to work, her statement wasn't "given under oath" and her opinion was "not unbiased." [AR 16-17, 21].

- Mr. Urbano had "some postural limitations" (could never climb ladders, ropes or scaffolds, frequently climb ramps and stairs and frequently balance, stoop, kneel, crouch and crawl); had moderate limitations in (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing himself; and retained the residual functional capacity to perform medium work with the following limitations: he could understand simple instructions, couldn't keep a "production rate pace", but could "meet the end of the day work goals", could occasionally adapt to rapid changes in the work-place, and could have occasional contact with co-workers, supervisors, and the general public. [AR 15-22]

- Based on the vocational expert's testimony, Mr. Urbano could not perform his past relevant work, but could perform other work that existed in significant numbers in the national economy, including linen room attendant (60,000 jobs), laundry laborer (100,000 jobs), and counter supply worker (100,000 jobs), and therefore was not disabled within the meaning of the Social Security Act. [AR 23-24]

When the Appeals Council denied Mr. Urbano's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones

3

v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mr. Urbano contends that the ALJ erred in: (1) assessing his mental and physical residual functional capacity; (2) weighing the medical evidence, specifically the statements of his treating physician, Dr. Verhagen; and (3) evaluating his testimony regarding his symptoms and their limiting effects. The court agrees.

The ALJ's handling of the opinions of Dr. Verhagen, who was Mr. Urbano's treating neurologist from December 2012 to at least April 2017, had a direct impact on her residual functional capacity and credibility determinations. The regulations governing disability determinations provide that a treating physician's opinion on the nature and severity of an impairment is entitled to controlling weight, if it "is well-supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 1527(c)(2). The ALJ gave Dr. Verhagen's opinion little weight because Dr. Verhagen didn't evaluate most of the areas of functioning and declined to comment on many abilities. It appears that the ALJ was referring to the doctor having left places blank in his Medical Source Statement (Exh. 8F). What the doctor left blank might be important, but not being a neurologist, the court can't figure out why, and the ALJ didn't explain why or build a logical bridge from the record to the point that little weight is given to what Dr. Verhagen *did* say because there were things that he *didn't* say.

The ALJ also said Dr. Verhagen's opinion was unsupported by objective clinical findings and was inconsistent with the evidence considered as a whole, but didn't identify the medical evidence that was inconsistent with the treating neurologist's opinion and entitled to greater weight. Dr. Verhagen said in several places in his report that Mr. Urbano's abilities depend on the day, that the symptoms come and go, that he has good days and bad days, and that he would likely be absent from work more than three times a month. The rest of the record seems perfectly consistent with that. Sometimes he was doing well, and the medical records reflect that; other times, he was doing poorly, even very poorly, such as during his hospitalization, and the medical records reflect that.

The ALJ's opinion doesn't reflect good days and bad days or the likelihood that Mr. Urbano would miss work due to his impairments. Her opinion seems to be trying to describe what Mr. Urbano's condition is on an average day, something she could point to an say these are his symptoms and capabilities. That becomes critical in light of the testimony of the vocational expert, Mr. Gusloff. The ALJ's last hypothetical question asked Mr. Gusloff what would happen if Mr. Urbano's impairments would produce good days and bad days that would make him absent from work for two or more days per month, and Mr. Gusloff testified that it would make him unemployable.

It's not clear from this record how the ALJ got from this medical record, which includes Dr. Verhagen's description of good days and bad days, to a denial

of benefits in light of the vocational experts testimony that regular absences of two or more days a month would make Mr. Urbano unemployable. There might be a logical bridge, but the path the ALJ traveled isn't evident from her opinion.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   February 13, 2020

/s/ Robert L. Miller, Jr.
Judge
United States District Court
